1  WILLIAM L. ANTHONY, JR. (State Bar No. 106908)
   I. NEEL CHATTERJEE (State Bar No. 173985)
2  MONTE M.F. COOPER (State Bar No. 196746)
   SAM O'ROURKE (State Bar No. 205233)
3  MICHAEL C. SPILLNER (State Bar No. 205785)
   ORRICK, HERRINGTON & SUTCLIFFE LLP
4  1000 Marsh Road
   Menlo Park, California  94025
5  Telephone:    (650) 614-7400
6  Facsimile:    (650) 614-7401

7  Attorneys for Defendant
   Inktomi Corporation
8

9                        UNITED STATES DISTRICT COURT

10                      NORTHERN DISTRICT OF CALIFORNIA

11                            SAN FRANCISCO DIVISION

12 | NETWORK CACHING TECHNOLOGY, | CASE NO. C 01-2079 VRW
13 | L.L.C., |
14 |         Plaintiff, | **DEFENDANT INKTOMI CORPORATION'S MOTION TO DISMISS PLAINTIFF NCT'S AMENDED COMPLAINT DUE TO NCT'S LACK OF STANDING**
15 |         v. |
16 | NOVELL, INC.; VOLERA, INC.; AKAMAI TECHNOLOGIES, INC.; CACHEFLOW, INC.; and INKTOMI CORPORATION, |
17 | | Date:   May 30, 2002
18 | | Time:   2:00 p.m.
   | | Judge:  Honorable Vaughn R. Walker
19 |         Defendants. | Place:  Courtroom 6, 17th Floor

DOCSSV1:191034.1
12705-2 SO1

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

INKTOMI'S MOTION TO DISMISS – CASE No. C 01-2079 VRW

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................... 1

II. STATEMENT OF RELEVANT FACTS ................................................................. 2

    A. Issuance Of The Patents-In-Suit ................................................................... 2

    B. Assignment Of The Patents-In-Suit To Inca ................................................ 3

    C. The Terms Of The License To NCT And Inca's Retention
       Of Substantial Rights In the Patents-In-Suit ................................................ 3

    D. The NCT Litigation Strategy Reveals Inca's Retention Of
       Substantial Rights In The Patents-In-Suit ................................................... 4

III. ARGUMENT ............................................................................................................ 6

    A. NCT Has The Burden of Proving Its Standing To Sue ................................ 6

    B. Standing Is A Jurisdiction Question Of Law That Cannot Be
       Waived .......................................................................................................... 7

    C. NCT Does Not Hold "All Substantial Rights" Under The
       Patents-In-Suit .............................................................................................. 7

IV. CONCLUSION ........................................................................................................ 9

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abbott Labs. v. Diamedix Corp.*,
    47 F.3d 1128 (Fed. Cir. 1995)............................................................................ 6, 7, 8, 9

*Cedars-Sinai Med. Ctr. v. Watkins*,
    11 F.3d 1573 (Fed. Cir. 1993).................................................................................... 6, 7

*Cooper v. Prime Image, Inc.*,
    No. 97-21050 *SW*, 1999 U.S. Dist. LEXIS 14898 (N.D. Cal. 1999) .................................. 8

*Enzo APA & Son, Inc. v. Geapag A.G.*,
    134 F.3d 1090 (Fed. Cir. 1998)....................................................................................... 7

*Int'l Business Machines Corp. v. Conner Peripherals Inc.*,
    30 U.S.P.Q. 2d 1315 (N.D. Cal. 1994)........................................................................... 7

*Intellectual Property Dev., Inc. v. TCI Cablevision of Cal., Inc.*,
    248 F.3d 1333 (Fed. Cir. 2001)....................................................................................... 8

*Mentor H/S, Inc. v. Medical Device Alliance, Inc.*,
    240 F.3d 1016 (Fed. Cir. 2001)....................................................................................... 7

*Ortho Pharm. Corp. v. Genetics Institute, Inc.*,
    52 F.3d 1026 (Fed. Cir. 1995)......................................................................................... 7

*Pfizer Inc. v. Elan Pharm. Research Corp.*,
    812 F. Supp. 1352 (D. Del. 1993).................................................................................... 6

*Refac Int'l Ltd. v. Visa USA, Inc.*,
    16 U.S.P.Q. 2d 2025 (N.D. Cal. 1990)............................................................................ 7

*Speedplay, Inc. v. Bebop, Inc.*,
    211 F.3d 1245 (Fed. Cir. 2000)....................................................................................... 7

*TM Patents, L.P. v. Int'l Business Mach. Corp.*,
    121 F. Supp. 2d 349 (S.D.N.Y. 2000)............................................................................. 6

*Textile Productions, Inc. v. Mead Corp.*,
    134 F.3d 1481 (Fed. Cir. 1998)................................................................................... 2, 7

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*,
    944 F.2d 870 (Fed. Cir. 1991)......................................................................................... 8

*Warth v. Seldin*,
    422 U.S. 490 (1975)........................................................................................................ 6

*Waterman v. Mackenzie*,
    138 U.S. 252 (1891)........................................................................................................ 2

**STATUTES**

35 U.S.C. § 281 (1994) .................................................................................................................. 7

Fed. Rule of Civil Procedure 12(b)(1) ................................................................................... 2, 7, 9

Fed. Rule of Civil Procedure 12(b)(7) ................................................................................... 2, 7, 9

<b>Page</b>

1    <b><u>NOTICE OF MOTION AND MOTION</u></b>

2    PLEASE TAKE NOTICE THAT on May 30, 2002, at 2:00 p.m. (or as soon thereafter as

3    the matter may be heard) in Courtroom 6 of the United States District Court for the Northern

4    District of California, defendant Inktomi Corporation ("Inktomi") will and hereby does move this

5    Court to enter an Order dismissing the Amended Complaint of plaintiff Network Caching

6    Technology, L.L.C. ("NCT").

7    Inktomi makes its motion on the basis that NCT cannot pursue a claim against Inktomi

8    because it does not own all substantial rights to the patents-in-suit.  At least one third-party, Inca

9    Technology, Inc. ("Inca"), has substantial rights, including rights to enforce and initiate litigation,

10   to the patents-in-suit.  Inca is not currently a party to this dispute.  Accordingly, under clearly

11   established case law, NCT does not have standing to pursue its claim alone.  For these reasons,

12   Inktomi's motion should be granted.

13   This motion is based on the notice of motion, the memorandum of points and authorities,

14   the Declaration of Monte M.F. Cooper in Support of Inktomi's Motion to Dismiss ("Cooper

15   Dec."), the complete files and records in this action, all matters of which the Court may take

16   judicial notice, and any and all documentary evidence or oral argument as may be presented in

17   conjunction with the hearing on this motion.

18   <b><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></b>

19   **I.     <u>INTRODUCTION</u>**

20   Plaintiff NCT is not "the owner of all right, title and interest" in the patents-in-suit as it

21   alleges in its Amended Complaint. Amended Complaint ¶¶ 15-18.  Inca, a non-joined third party,

22   possesses rights in the patents-in-suit so substantial so as to deprive NCT of standing to bring this

23   lawsuit.  NCT's failure to ensure that it possessed standing to sue under the patents-in-suit at the

24   inception of this case is yet another example of its lack of preparation.  NCT's failure is a fatal

25   mistake, requiring dismissal of this case.

26   Pursuant to a Patent Assignment and License Agreement between NCT and Inca (the

27   "Patent Agreement" (Cooper Dec., Ex. 1)), Inca currently has the power to:

28   • sublicense the patents-in-suit without NCT's approval;

- withhold consent to NCT's granting licenses under the patents-in-suit;
- initiate lawsuits for infringement of the patents-in-suit;  and
- join with NCT in any lawsuit for infringement that NCT initiates, using its own counsel if it desires.

The Supreme Court long ago established the bedrock principle that <u>only</u> an assignee or exclusive licensee that possesses <u>substantially all rights</u> to a particular patent may sue for infringement. *Waterman v. Mackenzie*, 138 U.S. 252 (1891); *see also Textile Productions, Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998).  Because NCT does not possess anything resembling "substantially all rights" to the patents-in-suit, this case should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7).

## II. STATEMENT OF RELEVANT FACTS

### A. Issuance Of The Patents-In-Suit

On June 3, 1992, William Pitts ("Pitts") filed a Patent Cooperation Treaty ("PCT") application with the United States Patent and Trademark Office ("PTO"), No. PCT/US92/04939. Cooper Dec., Ex. 2 at 5:4-5.  In 1997, 1999 and 2000 the PTO allowed various claims associated with Pitts' PCT application to issue as U.S. Patent Nos. 5,611,049 ("the `049 patent"), 5,892,914 ("the `914 patent"), and 6,026,452 ("the `452 patent").  Cooper Dec., Exs. 3-5.  Those are three of the patents-in-suit in this case.

Pitts, Joel Rigler ("Rigler") and Robert Lister ("Lister") also separately filed two provisional patent applications with the PTO in 1997.  Those provisional patent applications were then consolidated into one continuation-in-part ("CIP") application that ultimately issued on July 4, 2000, as the fourth patent-in-suit, U.S. Patent No. 6,085,234 ("the `234 patent").  Cooper Dec. Ex. 6 at [63] (description of "Related U.S. Application Data").

Accordingly, Pitts is named as the sole inventor of three of the patents-in-suit: the `049, `914, and `452 patents. Cooper Dec., Exs. 3-5.  Pitts also is named as a co-inventor, with Rigler and Lister of the fourth patent-in-suit: the `234 patent. Cooper Dec., Ex. 6.

### B. Assignment Of The Patents-In-Suit To Inca

In 1996, Pitts, his patent attorney Donald Schreiber ("Schreiber"), and two others established Inca.  Cooper Dec., Ex. 7.  Shortly thereafter, on October 10, 1996, Pitts and his wife

entered into a "Patent License Agreement" with Inca, whereby they granted Inca "an irrevocable, perpetual, worldwide, non-exclusive license to make, use, sell, offer for sale, sublicense, and otherwise use and exploit the 'Licensed Patents.'" Cooper Dec., Ex. 8. The "Licensed Patents" include all patents deriving from the 1992 PCT application (including the `049, the `914, and the `452 patents-in-suit). Cooper Dec., Ex. 8 at §§ 1.1 & 3.1 (NCT12567-12568). The fourth patent-in-suit, the `234, was also assigned to Inca by Pitts, Rigler and Lister. Cooper Dec. Ex. 1.

### C. The Terms Of The License To NCT And Inca's Retention Of Substantial Rights In the Patents-In-Suit

In 1998, Inca announced that it was "in the process of forming a new legal entity, Network Caching Technology LLC ('NCT'), to pursue patent licensing revenue under Bill Pitts' original network file caching patent ('the Patent')." Cooper Dec., Ex. 9, at NCT12712. This plan required that Inca share certain rights with NCT. To that end, the parties negotiated an agreement which was eventually finalized at an NCT board meeting on April 6, 2001. Cooper Dec., Ex. 1.

The assignment agreement between Pitts, his wife, Inca and NCT ultimately divided the rights to the patents-in-suit between both NCT and Inca. With respect to the transfer of rights to NCT, the agreement states that Pitts, his wife and Inca "assign[ed] to NCT all of their right, title and interest, including the right to sue for past and future damages from infringing companies, in and to the [patents-in-suit] . . . ." Cooper Dec. Ex. 1, §§ 1-2, at NCT 12554.

However, despite the fact that the patents-in-suit were purportedly "assigned" to NCT, the rights retained by Inca are so significant that the transfer to NCT is illusory. First, Inca has retained a "veto" power over any license in certain fields. Specifically, under the Patent Agreement Inca retains the right to prevent NCT from offering a license within the File System Field[1] to: (a) any entities that NCT sues for infringing the patents-in-suit; (b) any entities that NCT accuses of infringing the patents-in-suit; or (c) any entities that unilaterally request a license

---

[1] The "File System Field" in which Inca retains the right to grant sublicenses is defined as "limited to only software operating on SMB/CIFS, NFS, AFS, DFS, RFS, Appleshare and/or NCP protocols, including any future protocols derived from the SMB/CIFS, NFS, DFS, RFS, Appleshare or NCP protocols." Cooper Dec. Ex. 1, § 3 at NCCT12555.

to the patents-in-suit from NCT.[2]  Cooper Dec., Ex. 1, § 4(A) at NCT 12555.  In particular, NCT must allow Inca thirty calendar days to decide whether Inca will agree to allow NCT to offer a license in the File System Field.  *Id.*  If Inca objects at any time within those thirty days, Inca may veto any proposed license covering the File System Field, provided that it notifies NCT in writing of the reason(s) why.  *Id.*

Second, Inca retained the right to litigate infringement claims related to the patents-in-suit.  The Patent Agreement provides that whenever Inca concludes that an infringement of the patents-in-suit is occurring in the File System Field, Inca may notify NCT of that fact and produce all evidence supporting the conclusion.  Cooper Dec., Ex. 1, § 7(A) at NCT12557.  If after six months following such notification NCT still has failed to notify the putative infringer of its purported infringement, then Inca may "at its own option and expense, independently initiate and prosecute litigation against the putative infringer seeking to enforce [the patents-in-suit] solely in the File System Field."  *Id.* § 4(B).  Upon such filing, NCT must "join in, and agrees to be bound by the result of, any such action."  *Id.*

Third, Inca is obligated to assist in litigation brought by NCT.  Inca agreed to "cooperate fully" with NCT any time NCT files a patent infringement lawsuit like the present case.  Cooper Dec., Ex. 1, § 7(C)(i) at NCT 12557.  Indeed, Inca may, at its own option and own expense, "actively participate" in the litigation, regardless of whether or not the case involves the File System Field.  *Id.* § 7(C)(ii) at NCT 12557-58.  If Inca joins a case, it is given the option to become a party to such litigation and may choose its own counsel.  *Id.*

### D. **The NCT Litigation Strategy Reveals Inca's Retention Of Substantial Rights In The Patents-In-Suit.**

NCT's statements prior to and concurrent with the filing of the present lawsuit confirm that NCT and Inca recognize that NCT does not have all substantial rights in the patents-in-suit.

**REDACTED**

\\\

---

[2]  The Parties also agreed that Inca would have a broad non-exclusive license to the patents-in-suit within the File System Field.  See Cooper Decl., Ex. 1, § 3.

1 \\\
2 \\\
3 \\\
4 \\\
5 \\\
6 \\\
7 \\\
8 \\\
9 \\\
10 \\\
11 \\\
12 \\\
13 \\\
14 \\\
15 \\\

Inca's interest is further demonstrated in the "Disclosure of Non-Party Interested Entities or Persons" filed with its initial Complaint against Novell and Volera. NCT admitted that Inca "(i) ha[s] a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) ha[s] a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding." Cooper Dec. Ex. 12.

Other internal documents reflect that NCT intended to divide its rights to the patents-in-suit with Inca. For instance, in an undated draft Memorandum to NCT's Directors discussing the opinions of litigation counsel on the issue, Mitchell described how Inca and NCT planned to divide the bundle of rights under the patents-in-suit so that Inca would retain rights sufficient to allow it to license others and sue for infringement:

> Inca already owns a patent that is sufficient to block other companies from entering the file system caching space. Is it not reasonable for Inca to demand an exclusive field of use license for the NFS, SMB, and NCP protocols for the patent that it already owns as a condition for transferring the ownership of the patent to some other party at no charge?

Cooper Dec., Ex. 11.

All of these documents illustrate NCT's and Inca's intent to structure the purported assignment so that NCT would not retain substantially all rights related to the patent. Accordingly, this case must be dismissed, because the fact that NCT does not hold all substantial rights in the patents-in-suit indicates that it also does not have standing to pursue its claims.

## III.     ARGUMENT

### A.     NCT Has The Burden of Proving Its Standing To Sue.

In any lawsuit, the plaintiff must have legal standing to sue. The Court's jurisdiction over suits is limited to the adjudication of "cases or controversies" as defined by Article III, § 2, of the United States Constitution. *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). The "case or controversy" requirement mandates that plaintiff have "standing" to assert its claims. *Id*. Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Id*.

In a patent case, "[t]he right to sue is . . . an incident of legal title to the patent." *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1131 (Fed. Cir. 1995). Significantly, it is NCT's burden to prove its standing to sue for infringement, since "[t]he burden of establishing jurisdiction in the district court lies with the party seeking to invoke the court's jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993).

When standing is challenged, the plaintiff "must do more than merely plead title ownership…." *TM Patents, L.P. v. Int'l Business Mach. Corp.*, 121 F. Supp. 2d 349, 367 (S.D.N.Y. 2000). "It is well settled that standing cannot be 'inferred argumentatively from averments in the pleadings,' . . . but rather 'must affirmatively appear in the record . . . .'" *Pfizer Inc. v. Elan Pharm. Research Corp.*, 812 F. Supp. 1352, 1356 (D. Del. 1993) (quoting *Grace v. American Cent. Ins. Co.*, 109 U.S. 278, 284 (1883) and *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)). Accordingly, NCT "must produce . . . written instrument[s] documenting the transfer of proprietary rights." *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000).

Even if NCT produces documentation of the purported assignment of the patents-in-suit,

the Court must "look to the substance of [the] agreement to determine whether it has the effect of an assignment and, thus, satisfies the statutory requirement that the 'patentee' must sue." *Ortho Pharm. Corp. v. Genetics Institute, Inc.*, 52 F.3d 1026, 1030 (Fed. Cir. 1995).

### B. Standing Is A Jurisdiction Question Of Law That Cannot Be Waived.

This threshold issue of standing is a jurisdictional question of law and cannot be waived. *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 240 F.3d 1016, 1018-19 (Fed. Cir. 2001). Because standing is a threshold issue, a defendant challenging the plaintiff's ownership of a patent may at any time move pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7), to dismiss a patent infringement action for lack of subject matter jurisdiction. *See e.g.*, *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993) (noting that a challenge to standing is appropriate under Rule 12(b)(1)); *Int'l Business Machines Corp. v. Conner Peripherals Inc.*, 30 U.S.P.Q.2d 1315, 1318 (N.D. Cal. 1994) (Whyte, J.) (noting that a challenge to standing is appropriate under Rule 12(b)(7)).

### C. NCT Does Not Hold "All Substantial Rights" Under The Patents-In-Suit

Only a patentee may bring an action for patent infringement. 35 U.S.C. § 281 (1994)("A patentee shall have remedy by civil action for infringement of his patent."). "There are three primary rights in any patent: (1) exclusivity; (2) the right to transfer; and (3) the right to sue infringers." *Refac Int'l Ltd. v. Visa USA, Inc.*, 16 U.S.P.Q.2d 2025, 2027 (N.D. Cal. 1990)). A party is considered a patentee only when they also hold "all substantial rights" under the patent. *Textile Productions, Inc.* v. Mead Corp., 134 F.3d 1481, 1484 (Fed. Cir. 1998).

A party holding anything less than "all substantial rights" under the patent is simply a licensee and lacks standing to sue. *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1098 (Fed. Cir. 1998); *Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995). In order "[t]o determine whether a patent transfer agreement conveys all substantial rights under a patent to a transferee or fewer than all of those rights, a court must assess the substance of the rights transferred and the intention of the parties involved." *Intellectual Property Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1342 (Fed. Cir. 2001). A particular transfer "will be deemed an assignment if 'it appears from the surrounding circumstances that the parties intended

that the patentee surrender all of his substantial rights to the invention.'" *Cooper v. Prime Image, Inc.*, No. 97-21050 SW, 1999 U.S. Dist. LEXIS 14898, at *8 (N.D. Cal. 1999) (Williams, J.) (quoting *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 874 (Fed. Cir. 1991)). It is clear even from the limited number of documents in this case that NCT does not possess all substantial rights in the patent and many of the rights associated with the patents were in fact transferred to Inca.

Inca's rights to pursue litigation are sufficient to demonstrate that NCT does not have all substantial rights related to the patents-in-suit. The Federal Circuit considers whether the plaintiff has obtained the sole right to sue others "particularly dispositive" in determining whether the plaintiff is an assignee or merely a licensee. *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991). This is due to the fact that "[t]he policy underlying the requirement to join the owner when an exclusive licensee brings suit is to prevent the possibility of two suits on the same patent against a single infringer." *Id*. The agreement between NCT and Inca expressly retains for Inca the right to sue on its own, as well as the right to actively participate in any infringement action brought by NCT under the patents-in-suit. Indeed, Inca and NCT both interpret the assignment as allowing Inca to pursue claims under the patents-in-suit.

A party possesses substantial rights if it can: 1) "bring its own infringement actions," 2) "prevent [plaintiff] from assigning its rights under the license to any party other than a successor in business," and 3) "participate in a suit brought by [plaintiff]." *Abbott*, 47 F.3d at 1132. Like the transferor in *Abbott*, Inca has the right to: 1) bring its own infringement actions, 2) prevent NCT from licensing the patents, and 3) participate in any suit brought by NCT. NCT, therefore, does not have standing to pursue its claim. In *Abbott*, the Federal Circuit found that the plaintiff had been transferred fewer than all substantial patent rights because the transferor retained the rights described above. The Court concluded the transferee did not have standing. The situation is no different here. As was the circumstance in *Abbott* NCT lacks standing, and in the absence of such subject matter jurisdiction this case necessarily must be dismissed.

## IV. CONCLUSION

For the reasons set forth above, Inktomi moves the Court to dismiss NCT's Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(7).

Dated: April 25, 2002             Respectfully submitted,

                                  WILLIAM L. ANTHONY, JR.
                                  I. NEEL CHATTERJEE
                                  MONTE M.F. COOPER
                                  SAM O'ROURKE
                                  MICHAEL C. SPILLNER
                                  ORRICK, HERRINGTON & SUTCLIFFE LLP


                                  /s/ Monte M.F. Cooper/s/
                                       Monte M.F. Cooper
                                  Attorneys for Defendant Inktomi Corporation