WILLIAM L. ANTHONY, JR. (State Bar No. 106908)
I. NEEL CHATTERJEE (State Bar No. 173985)
MONTE M.F. COOPER (State Bar No. 196746)
SAM O'ROURKE (State Bar No. 205233)
MICHAEL C. SPILLNER (State Bar No. 205785)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California 94025
Telephone:  (650) 614-7400
Facsimile:  (650) 614-7401

Attorneys for Defendant
Inktomi Corporation

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| NETWORK CACHING TECHNOLOGY, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> NOVELL, INC.; VOLERA, INC.; AKAMAI TECHNOLOGIES, INC.; CACHEFLOW, INC.; and INKTOMI CORPORATION, <br><br> Defendants. | CASE NO. C 01-2079 VRW <br><br> **DEFENDANT INKTOMI CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF NCT'S AMENDED COMPLAINT DUE TO NCT'S LACK OF STANDING "REDACTED"** <br><br> Date: May 30, 2002 <br> Time: 2:00 p.m. <br> Judge: Honorable Vaughn R. Walker <br> Place: Courtroom 6, 17th Floor |

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

DOCSSV1:193430.4

INKTOMI'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
CASE No. C 01-2079 VRW

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 1 |
| | A. | The Agreement gave Inca substantial rights in the patents-in-suit. | 2 |
| | | 1. The express language of the assignment gives Inca substantial rights. | 2 |
| | | 2. The statements of Inca and NCT indicate an intent to give Inca substantial rights. | 3 |
| | |    a. NCT understood Inca to have substantial rights in the patents-in-suit. | 3 |
| | |    b. Inca understood that it had substantial exclusionary rights in the patents-in-suit. | 3 |
| | B. | Inca's rights are not a minor derogation. | 3 |
| | | 1. The right to sue is not a minor derogation of rights. | 3 |
| | |    a. *Ortho* does not support NCT's position that the Agreement does not confer substantial rights on Inca. | 4 |
| | |    b. *ACS* does not support NCT's position that a "right to sue" is a minor derogation. | 6 |
| | | 2. "Veto" power is not a minor derogation. | 7 |
| | | 3. Payment of damages is irrelevant. | 8 |
| | C. | NCT mischaracterizes the assignment rights in the patent-in-suit. | 8 |
| | D. | Extrinsic evidence of NCT's and Inca's understanding of the Agreement is consistent with Inktomi's interpretation. | 9 |
| | | 1. NCT's and Inca's statements are consistent with the Agreement and reflect the intentions of the parties. | 9 |
| | | 2. Prior statements by Mitchell and Pitts are consistent with the Agreement. | 10 |
| III. | CONCLUSION | | 10 |

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY - MARSH ROAD

-i-

# TABLE OF AUTHORITIES

## CASES

*Abbott Laboratories v. Diamedix Corp.*,
    47 F.3d 1128 (Fed. Cir. 1995)................................................................................2, 4, 5, 10

*Advanced Cardiovascular Systems v. SciMed Life System*,
    40 U.S.P.Q. 2d 1286 (N.D. Cal.1996) ......................................................................1, 4, 5, 6, 7

*Fisher v. Allis-Chalmers Corp. Product Liability Trust*,
    116 Cal. Rptr. 2d 310 (Ct. App. 2002)..............................................................................9

*Intellectual Property Dev., Inc. v. TCI Cable Vision of California*,
    248 F.3d 1333 (Fed. Cir. 2001)..........................................................................................2, 4, 8

*Mentor H/S, Inc. v Medical Device Alliance, Inc.*,
    240 F.3d 1016 (Fed. Cir. 2001)........................................................................................7, 11

*Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.*,
    52 F.3d 1026 (Fed. Cir. 1995)..........................................................................................1, 4, 5, 6, 10

*Pacific Gas & Electric v. Zuckerman*,
    234 Cal. Rptr. 630 (Ct. App. 3d Dist., 1987)....................................................................10

*Prima Tek II v. A-Roo Co.*,
    222 F.3d 1372 (Fed. Cir. 2000)........................................................................................2, 5, 10

*Southern California Edison v. Superior Court*,
    44 Cal. Rptr. 2d 227 (Ct. App. 1995)................................................................................9

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*,
    944 F.2d 870 (Fed. Cir. 1991)..........................................................................................4, 5, 7, 8

## I. INTRODUCTION

NCT has not met its burden to show that it possesses all substantial rights in the patents-in-suit, as required by Rules 12(b)(1) and 12(b)(7). A plain reading of the Patent Assignment and License Agreement ("Agreement") shows that Inca also possesses substantial rights to the patents-in-suit.

Specifically, Inca has the following substantial rights in the "File System Field":

- Inca may *sublicense* the patents-in-suit *without NCT's approval*
- Inca can *preclude NCT from granting licenses* under the patents-in-suit
- Inca may *independently initiate and control lawsuits* for infringement of the patents-in-suit
- Inca may *join with NCT in any lawsuit* for infringement that NCT initiates, using its own counsel if it desires

Since the signing of the Agreement, both NCT and Inca have recognized that Inca possesses substantial rights. For example:

- Jane Mitchell, NCT's president, recognized potential customers may have obligations to both NCT and Inca if they wish to purchase patented products
- William Pitts, Inca's founder, understood the Agreement to provide Inca with exclusive exclusionary rights under the patents in suit

In its opposition, NCT attempts to parse out the rights held by Inca, arguing that each right, individually, is not substantial. It is important, however, that the Court consider the entire grant to Inca as a whole, rather than looking at each individual right in a vacuum. Taken as a whole, and particularly based upon Inca's exclusionary rights, there is little question that NCT lacks standing to pursue its claim. Because of the substantial rights held by Inca, NCT lacks proper standing and this case should be dismissed.

## II. ARGUMENT

The undisputed evidence reveals that Inca (a company founded and largely owned by William Pitts) possesses substantial rights in the patents-in-suit, thereby defeating NCT's standing to pursue its claim. NCT raises two interrelated arguments in attempting to refute this

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

DOCSSV1:193430.4

-1-

INKTOMI'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
CASE No. C 01-2079 VRW

evidence: (1) NCT has been assigned full rights, title and interest in the `049, `914, `452, and `234 patents by Inca and Pitts, and (2) the rights that Inca is acknowledged to possess are not "substantial."[1] These arguments are inconsistent with both the facts and the applicable law.

### A. The Agreement gave Inca substantial rights in the patents-in-suit.

NCT incorrectly argues that the Agreement effected a complete assignment to NCT. Specifically, NCT fails to address the actual legal effect of that Agreement taken as a whole.

#### 1. The express language of the assignment gives Inca substantial rights.

Inca holds significant exclusionary rights in the patents-in-suit, including rights within the File System Field to: 1) sublicense the patents-in-suit without NCT's approval; 2) withhold consent to NCT's granting licenses under the patents-in-suit; 3) initiate and control lawsuits for infringement of the patents-in-suit and bind NCT to the result of any such litigation; and 4) join with NCT in any lawsuit for infringement that NCT initiates, using its own counsel if it desires. Chatterjee Dec., Ex. 1.

Control over an exclusionary right is indicative of a substantial right in a patent. *Prima Tek II v. A-Roo Co.*, 222 F.3d 1372, 1380 (Fed. Cir. 2000) (holding that licensee did not have standing due to the obligations to sublicense rights to another party and the retention of rights by patentee); *see also Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995) (A "licensee" possesses substantial rights in a patent from the "licensor" if it can: 1) bring its own infringement actions, 2) prevent the licensor from assigning its rights under the license to any party other than a successor in business, and 3) participate in a suit brought by the licensor).

Indeed, the Federal Circuit has recently confirmed that "limits on a transferee's assignment rights *weigh in favor* of finding that an agreement constitutes a transfer of fewer than all substantial rights in a patent." *Intellectual Property Dev., Inc. v. TCI Cable Vision of California*, 248 F.3d. 1333, 1345 (Fed. Cir. 2001) (emphasis added). Accordingly, Inca's retention of exclusionary rights demonstrates that it retained rights in the patents-in-suit so

---

[1] NCT also includes discussion concerning Rule 19. However, it provides no explanation of the relevance of Rule 19 to the present motion.

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

DOCSSV1:193430.4

-2-

INKTOMI'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
CASE NO. C 01-2079 VRW

substantial that NCT lacks standing to sue on its own.

### 2. The statements of Inca and NCT indicate an intent to give Inca substantial rights.

NCT's and Inca's statements prior to and concurrent with the filing of the present lawsuit confirm that NCT and Inca recognize that NCT does not hold all substantial rights in the patents-in-suit. NCT proffers no evidence to the contrary.

#### a. NCT understood Inca to have substantial rights in the patents-in-suit.

**REDACTED**　　**REDACTED**　　**REDACTED**　　**REDACTED**

#### b. Inca understood that it had substantial exclusionary rights in the patents-in-suit.

Not only did NCT understand that Inca had substantial rights in the patents in suit, particularly in the File System Space, but Inca understood this as well. In an e-mail from Pitts to Garth Gibson written after the execution of the Agreement, Pitts described Inca's intellectual property and stated explicitly that "Inca has retained the *exclusive rights to operate in the file system field* (as opposed to the web space) *under the following patents:*" Pitts then goes on to list the very patents-in-suit: the '049, '914, '452, and '234 patents. Chatterjee Dec., Ex. 2. This statement could not be more clear: the Agreement gave Inca substantial, even exclusive, rights under the patents-in-suit to operate in the file system space.

A recent Inca business plan (dated in October 2001, after the Agreement was signed) also illustrates that Inca understands that it has substantial exclusionary rights in the patents-in-suit. Chatterjee Dec., Ex. 3. Under the subheading "Patent Protection Will Secure Inca's Position," the plan listed six patents, four of which are the patents-in-suit, and concluded that "[a]ltogether the *Inca patent portfolio presents a formidable barrier* to entry to any would be trespassers." *Id.* Inca's statements reflect the substantial exclusionary rights possessed by Inca to the patents-in-suit.

### B. Inca's rights are not a minor derogation.

#### 1. The right to sue is not a minor derogation of rights.

NCT claims that the "right to sue" conveyed to Inca is a minor derogation of rights

DOCSSV1:193430.4

-3-　INKTOMI'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
CASE NO. C 01-2079 VRW

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

because NCT has only granted a "non-exclusive" license. NCT is wrong on the facts of this case and the law.

Under the Agreement, Inca is entitled to initiate litigation, sublicense, and reap the financial and exclusionary rewards within the "File System Field," regardless of the semantics of the "non-exclusive" license.[2] *See Abbott*, 47 F.3d at 1132 (ability to "indulge infringements" important part of right to exclude). These rights, taken together, severely limit NCT's exclusionary rights in the patents-in-suit. *Id.* (looking to the actual rights transferred under exclusive license to determine issue of standing); *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875 (Fed. Cir. 1991) ("It is well settled that whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions"); *Advanced Cardiovascular Systems v. SciMed Life System*, 40 U.S.P.Q.2d 1286 (N.D. Cal.1996) ("The particular name give to an agreement does not control its construction as a license or an assignment"). Indeed, under this structure, NCT has no ability to control licensing in the File System Field at all. The final decision over the patents use in the "File System Field" rests <u>solely</u> with Inca.

Moreover, Inca also has the right both to notify NCT of its belief of infringement, and to participate in *any* litigation brought by NCT, regardless of whether it relates to the File System Field or not. The litigation right that Inca possess is a factor suggesting that NCT does not possess all substantial rights in the patents-in-suit. *Intellectual Property*, 248 F.3d at 1344.

> a. <u>***Ortho* does not support NCT's position that the Agreement does not confer substantial rights on Inca.**</u>

NCT cites *Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.*, 52 F.3d 1026 (Fed. Cir. 1995), for the proposition that the grant to Inca of the right to independently initiate and control litigation to enforce the patents-in-suit within the File System Space is ineffective. NCT goes so

---

[2] Indeed, under the Agreement, Inca is given the right to participate in litigation if it chooses and is obligated to assist NCT in NCT-initiated litigation. See Chatterjee Dec., Ex. 1 § 7(c)(i), 7(c)(ii) (at NCT 12557-12558).

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

DOCSSV1:193430.4

-4-

INKTOMI'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
CASE NO. C 01-2079 VRW

far as to claim that, contrary to the express language of the Agreement, "Inca cannot sue in its own name, or even join suit as a party, because it only has a non-exclusive license which lacks sufficient patent rights to confer any standing to Inca." NCT Opp. pp. 13-14. NCT maintains that because its grant to Inca is called a "non-exclusive license," that nomenclature is dispositive of the significance of that grant.[3] NCT concludes that Inca is, therefore, precluded from ever bringing or joining a lawsuit to enforce the patents-in-suit. This simplistic reading of *Ortho* is simply wrong.

The *Ortho* court held that a contractual provision purportedly granting Ortho the right "to bring, defend, and maintain any appropriate suit or action [to enforce the patents at issue]" was ineffective because Ortho did not otherwise possess sufficient exclusionary rights. *Ortho*, 52 F.3d at 1034. The parties in *Ortho* termed the transfer of rights an "exclusive license." The court, however, looked beyond what the grant was called and determined that the transfer was actually only a non-exclusive implied license to use the invention of the '008 patent in one location in the United States. *Id.* at 1033. In light of the limited scope of Ortho's license grant, the court found it unreasonable to enforce an overly-broad "right to sue clause" with no limitations, geographic or otherwise. The court reasoned that a broad, unlimited right to sue clause simply was not commensurate with the licensee's other limited rights in the patent. Accordingly, the right to sue clause, standing on its own, could not grant Ortho standing to enforce the '008 patent.

While NCT's grant to Inca may purport to be a "non-exclusive license," the substantial rights granted to Inca prove otherwise. The Agreement has been carefully crafted and worded such that Inca's right to sue is completely consistent with, and tied to, its other exclusionary rights

---

[3] Nomenclature is not determinative of the effect of a transfer. The Federal Circuit has repeatedly held that a court cannot rely on the name given to a particular transfer, but must look to the substance of an agreement to determine what rights actually have been transferred. *See Prima Tek II*, 222 at 1378; *see also Ortho*, 52 F.3d 1026; *Abbott Labs.*, 47 F.3d at 1132; *Vaupel*, 944 F.2d at 875; *Advanced Cardiovascular Systems v. SciMed Life System*, 40 U.S.P.Q.2d 1286 (N.D. Cal. 1996).

in the patents-in-suit. NCT has explicitly carved out and given Inca complete control of the rights in the patents-in-suit within the File System Field. Inca has the right to veto licenses within the field and the ability to sublicense within the field. Inca's ability to initiate and control litigation enforcing the patents within the field parallels and is commensurate with those other rights. The "right to sue" provision, therefore, does not stand on its own, rather it is meant to be read in conjunction and consistent with Inca's other exclusive rights in the File System Field.[4] Indeed, as noted, Inca itself does not characterize its rights within the File System Field as being nonexclusive. Chatterjee Dec., Ex. 2.

### b. *ACS* does not support NCT's position that a "right to sue" is a minor derogation.

NCT also relies on *Advanced Cardiovascular Systems v. SciMed Life System*, 40 U.S.P.Q.2d 1286 (N.D. Cal. 1996) ("*ACS*") to support its position that a "right to sue" covenant is simply a "minor derogation of rights." The inventor in *ACS* had substantially different rights than Inca.

In *ACS*, the inventor transferred all exclusive rights in his patents to ACS. ACS subsequently licensed back certain rights to the inventor. The court found this license back insufficient to strip ACS of its substantial rights in the patent. *Id.* at 1290-91. Again, the court in *ACS* stated that "[w]hether a transfer constitutes a sale or a license is determined by the substance of the transaction. . . . The particular name given to an agreement does not control its construction as a license or an assignment. . . ." *Id.* at 1289-90. The substance of the "license back" from ACS to the original inventor clearly did not provide the inventor with substantial rights in the patents at issue. Unlike Inca, he was not given the ability to grant sub-licenses, nor did it appear that he had veto power over ACS's grant of licenses. More importantly, however, is the fact that

---

[4] *Ortho* is also procedurally distinguishable as the plaintiff in *Ortho* tried to intervene in a prior case brought by its licensor, Amgen. Ortho did not, however, inform the Court in the prior action that it purportedly had a right to sue when Ortho intervened. Based upon an incomplete record, Ortho was denied the opportunity to intervene. When Ortho initiated a second action, the court held that Ortho could not pursue a separate action from Amgen, because it did not have sufficient rights to proceed without Amgen as a party.

DOCSSV1:193430.4

-6-

INKTOMI'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
CASE No. C 01-2079 VRW

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

1  the inventor could not, under any circumstances, independently initiate and control litigation to
2  enforce the patents at issue. Rather, he was required to obtain ACS's authorization before filing
3  such an action. *Id.* at 1290. The court appeared to find this limitation highly persuasive in
4  determining that ACS maintained substantial exclusionary rights in the patents and that the
5  "license back" did not grant the inventor substantial rights.

6  While the Agreement in this case does appear to initially grant NCT "all right, title and
7  interest" in the '049, '914, '452 and '234 patents, NCT contemporaneously relinquishes
8  substantial rights in the patents to Inca. Unlike the *ACS* case, Inca has the ability to sublicense
9  within the File System Field and NCT is required to obtain Inca's approval before it can grant
10 licenses within the File System Field. c.f. *Mentor H/S, Inc. v Medical Device Alliance, Inc.*, 240
11 F.3d 1016, 1018 (Fed. Cir. 2001) (assignor's right to independently developed and manufacture
12 products for sale to exclusive licensee, and to supervise and control exclusive licensee's own
13 product development, was indicia that exclusive licensee did not possess substantially all rights in
14 the patent). An even greater distinction from the *ACS* agreement is that, under the present
15 Agreement, Inca has the right to independently initiate and control litigation, without NCT's
16 approval. Moreover, NCT is bound by the results of such litigation.

### 2. "Veto" power is not a minor derogation.

17 In its opposition, NCT argues that Inca's "veto" power is merely a "minor derogation
18 from the grant of rights." NCT Opp. pp. 16-17. In support of this argument, NCT relies heavily
19 upon *Vaupel*. This reliance is misplaced. The rights at issue in *Vaupel* are much less substantial
20 than those possessed by Inca. In addition to the right to veto licenses (rather than sublicenses),
21 Inca possesses the affirmative right to sublicense and initiate litigation, rights not possessed by
22 the *Vaupel* licensor. Indeed, the *Vaupel* court found the fact that the licensor (Marwosky) had not
23 retained the right to sue "particularly dispositive here because the ultimate question confronting
24 us is whether Marwosky must be joined." 944 F.2d at 875. Unlike Marwosky, Inca controls all
25 exclusionary rights in the File System Field.

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

DOCSSV1:193430.4

-7-

INKTOMI'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
CASE No. C 01-2079 VRW

### 3. Payment of damages is irrelevant.

Relying on the Agreement, NCT incorrectly argues that any and all monetary recovery from such litigation goes solely to NCT. NCT Opp. p. 5. The Agreement actually reads:

> Notwithstanding any joinder or other participation by the other parties to this Agreement in any lawsuit for patent infringement *filed by NCT*, or any negotiation or other agreement *negotiated by NCT* concerning a license to the Caching Patents or Network Infrastructure Patent, *except for sublicensing in the File System Space negotiated in conjunction with the sale or use of Inca's proprietary products and/or systems*, any payments or other recovery for patent infringement, whether by settlement or otherwise, shall be paid solely and exclusively to NCT and shall not be divided between the parties.

Geyer Dec., Ex. I, § 7(C) at NCT 12558. Although the provision grants NCT the full recovery of damages from any patent infringement suit that *NCT initiates*, the Agreement is silent as to which party receives the benefit of monetary recovery if *Inca initiates* the litigation. A more probable reading would provide Inca with full recovery for any patent infringement lawsuit that Inca initiates.[5]

Moreover, the Federal Circuit recently clarified that the "right to receive infringement damages is a neutral factor" in assessing whether the assignee has standing. *Intellectual Property*, 248 F.3d. at 1344, n.11; *see also Vaupel*, 944 F.2d at 875 ("the right to receive infringement damages is "merely a means of compensation under the agreement." Accordingly, financial recovery is not necessarily indicative of the ownership of substantial rights.

### C. NCT mischaracterizes the assignment rights in the patent-in-suit.

NCT argues that it is not prevented from assigning its rights in the patents-in-suit. In support, NCT refers to ¶¶ 4(B) and 11 of the Agreement. Neither of these sections states that NCT is free to assign all rights in the patents. To the contrary, these paragraphs only serve to support the conclusion that NCT is not free to assign all rights in the patents and, instead, Inca has substantial rights in certain aspects of the patents-in-suit.

Moreover, ¶ 11 of the Agreement is a standard survival clause. The fact that the

---

[5] In fact, documents produced by William Pitts support this interpretation of the payment provision. In dividing the "patent infringement litigation space" within the Agreement, Pitts intended for Inca to "get[] the recovery" for any litigation or negotiation controlled by Inca within the File System Field. Chatterjee Dec., Ex. 1 at PITTS-03-0119226.

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

DOCSSV1:193430.4

-8-

INKTOMI'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
CASE No. C 01-2079 VRW

agreement "shall be binding upon and inure to the benefit of the Successors and assigns of the parties hereto" in no way indicates one way or the other that NCT is free to assign its interests in the patents-in-suit without Inca's consent.

### D. Extrinsic evidence of NCT's and Inca's understanding of the Agreement is consistent with Inktomi's interpretation.

NCT claims that any statements made or actions taken by Inca or NCT with respect to the Agreement are inadmissible parole evidence. NCT misstates the law and fails to appreciate the facts.

#### 1. NCT's and Inca's statements are consistent with the Agreement and reflect the intentions of the parties.

Contrary to NCT's position, the representations of NCT president Mitchell and Inca founder and co-owner Pitts are not parole evidence. Rather, they are admissible evidence of the intentions of the parties in entering into the subject Agreement as well as performance under the Agreement. *See Southern California Edison v. Superior Court*, 44 Cal. Rptr. 2d 227, 234 (Ct. App. 1995) ("The rule is well-settled that in construing the terms of a contract the construction given it by the acts and conduct of the parties with knowledge of its terms, and before and controversy has arisen as to its meaning, is admissible on the issue of the parties' intent. . . . [T]his rule is not limited to the joint conduct of the parties in the course of performance of the contract."); *Fisher v. Allis-Chalmers Corp. Product Liability Trust*, 116 Cal. Rptr. 2d 310, 318 (Ct. App. 2002) ("Parol evidence of 'subsequent acts and conduct of the parties' may be relevant to contract interpretation because it manifests the mutual intention of the parties about how their contract should be applied.").

Statements by Mitchell and Pitts are entirely consistent with Inktomi's interpretation of the Agreement, and it is clearly permissible for the Court to consider the circumstances surrounding the Agreement and intentions of the parties in entering into the Agreement in determining what the Agreement actually conveys. *See* Cal. Civil Code §1647; Cal. Code Civ. Proc. §§ 1860, 1856(g). This is especially true considering that the Federal Circuit has repeatedly held that the label put on the Agreement is irrelevant – it is the "intention of the parties" and the

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

DOCSSV1:193430.4

-9-

INKTOMI'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
CASE No. C 01-2079 VRW

"substance of what was granted" that is dispositive. *Prima Tek II*, 222 F.3d at 1378; *see also Ortho*, 52 F.3d 1026 (Fed. Cir. 1995) (court did not merely rely on the name given a purported "licensing agreement" and looked to the substance of an agreement to determine what rights had been transferred); *Abbott Labs.*, 47 F.3d at 1132.

### 2. Prior statements by Mitchell and Pitts are consistent with the Agreement.

The statements of the contract negotiators are admissible. Contrary to NCT's assertions, Inktomi's use of extrinsic evidence to further illuminate the legal effect of the Agreement is proper. Inktomi is not using the evidence to contradict any term of the Agreement, rather the evidence brings to light the circumstances under which the Agreement was executed and the parties' subsequent statements concerning their understanding of the legal effect of the Agreement. Under California law, "[a] contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates," Civil Code § 1647. Simply put, "[u]nder the California parol evidence rule a party is entitled to introduce any extrinsic evidence which may aid in an interpretation of a written contract. . . .The test is not whether the agreement appears to the court to be clear and unambiguous on its face, but whether the extrinsic evidence is offered to support a meaning to which the language of the instrument is reasonably susceptible." *Pacific Gas & Electric v. Zuckerman*, 234 Cal. Rptr. 630, 1140-41 (Ct. App. 3d Dist., 1987).

The extrinsic evidence Inktomi seeks to use to better understand the terms of the Agreement is fully consistent with the language used by the parties to the Agreement.

## III. CONCLUSION

For the reasons set forth above and in its moving papers, Inktomi moves the Court to dismiss NCT's Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(7).

/////

/////

/////

DOCSSV1:193430.4

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

-10-

INKTOMI'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
CASE No. C 01-2079 VRW

Dated: May 16, 2002          Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

/S/
———————————————————
I. Neel Chatterjee
Attorneys for Defendant Inktomi Corporation

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

DOCSSV1:193430.4

-11-

INKTOMI'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
CASE No. C 01-2079 VRW