IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETWORK CACHING TECHNOLOGY, LLC, | No C-01-2079 VRW |
| Plaintiff, | ORDER |
| v | |
| NOVELL, INC, et al, | |
| Defendants. | |

Before the court are defendants' motions to dismiss and to sanction plaintiff's counsel for its alleged failure to conduct an adequate pre-filing investigation of its infringement claims and comply with Patent Local Rule 3-1, as described in the court's August 13, 2002, order. See Novell/Volera Mot for Sanctions (Doc #249); Novell/Volera Mot to Dism (Doc #266); Inktomi Mot for Sanctions (Doc #253); Inktomi Mot to Dism (Doc #259); Cacheflow Mot to Dism (Doc #260). For the reasons set forth below, the court DENIES defendants' motions to dismiss (Docs ## 259, 260, 266) and for sanctions (Docs ## 249, 253) without prejudice to renewal if it is shown during subsequent

proceedings that NCT's patent infringement allegations are ultimately meritless.

I

On May 29, 2001, plaintiff Network Caching Technology LLC (NCT) commenced this action against defendants Novell, Inc, Volera Inc, Akamai Technologies, Inc, Cacheflow, Inc and Inktomi Corporation, alleging infringement of certain NCT patents. Defendant Akamai Technologies, Inc has since been dismissed from this action.  See Notice of Dism (Doc #236).

NCT alleges that defendants infringed its patents for network services software products.  NCT alleges that it is the assignee of four patents at issue in this case: United States patent nos 5,611,049 ('049 patent); 5,892,914 ('914 patent); 6,026,452 ('452 patent); and 6,085,234 ('234 patent).  The patents at issue describe an algorithm for directing network traffic and speeding up networks by caching (storing duplicate images of data).  Applications of the patent technology are particularly useful in internet services to speed up and control internet traffic at a company's internet site and in intranet services to speed up and control traffic within a company's proprietary network.

NCT alleges that Novell, Volera and Inktomi make and sell software products that contain algorithms which allegedly infringe the patents.  Cacheflow allegedly manufactures and sells computer equipment, specifically network servers, which work by themselves and in conjunction with other software to infringe the patents.

In February and March 2002, defendants brought to the court's attention several discovery disputes regarding, inter alia, NCT's preliminary infringement contentions (PICs).  See Docs ## 66-86.  On March 15, 2002, the court held a status conference to discuss the parties' discovery disputes.  At that conference, NCT admitted that it had not reverse engineered defendants' products to determine whether the products infringed the patents at issue.  See Transcript (Doc #193), at 41:17-25.  The conference concluded with the court suggesting that NCT revise its PICs to provide more detailed infringement allegations.  See id at 48:10-50:5.  NCT revised its PICs and, based on further discussions with defendants, revised its PICs a second time.  Even with the second revision, defendants contended that NCT's PICs were inadequate and accordingly moved to strike NCT's second revised PICs and to dismiss the complaint for NCT's continued failure to comply with Patent LR 3-1.  See Docs ## 115, 126, 129, 134.

By written order dated August 13, 2002, the court found NCT's second revised PICs to be "plainly insufficient", granted defendants' motion to strike and ordered NCT to revise its PICs to comply with the requirements of Patent LR 3-1.  The court, however, declined to dismiss NCT's complaint, finding such action to be "premature" on the existing record.  8/13/02 Order (Doc #227), at 7.  The court found "no evidence before it that NCT has not attempted to comply with the court's orders and the local rules in this case. * * * Until this order, the court's involvement has not definitively determined which party has the correct view."  Id.

3

On October 15, 2002, NCT served its third revised PICs. Over two months later, on December 18, 2002, defendants filed the present motions to dismiss NCT's first amended complaint. See Docs ## 259, 260, 266.  Also on that date, Novell, Volera and Inktomi moved for sanctions against NCT and its counsel, Jones Day Reavis & Pogue.  See Docs ## 249, 253.

## II

Defendants move for dismissal primarily based on NCT's purported continued failure to comply with Patent LR 3-1 despite the court's August 13, 2002, order.  See Novell/Volera Mot to Dism (Doc #266); Inktomi Mot for Sanctions (Doc #253); Inktomi Mot to Dism (Doc #259); Cacheflow Mot to Dism (Doc #260). Alternatively, defendants also urge dismissal under FRCP 11, based on inadequacies in the pre-filing investigation conducted by Jones Day Reavis & Pogue, NCT's counsel.  See Novell/Volera Mot for Sanctions (Doc #249).  The court discusses each of these arguments below.

### A

Defendants argue that NCT's third revised PICS fail to meet the requirements of Patent LR 3-1 and warrants the harsh sanction of dismissal.  To support dismissal, defendants present various theories, including (1) NCT's failure to prosecute, pursuant to FRCP 41(b); (2) NCT's defiance of a discovery order, pursuant to FRCP 37; and (3) the court's inherent power to discipline willful or reckless misconduct.

Defendants attempt to characterize NCT's latest revised

4

1  PICs as its "fifth" consecutive and deliberate failure to comply
2  with Patent LR 3-1.  The court previously explained, however,
3  that NCT did not have actual notice that its PICs were deficient
4  until the court's August 13, 2002, order.  Notably, in response
5  to NCT's third revised PICs, defendants do not move to strike on
6  the ground of insufficiency, as they did previously, but rather
7  seek dismissal of the entire action.

8       It is well-settled that NCT has a duty to prosecute its
9  case.  See FRCP 41(b).  A court possesses the inherent authority
10 to dismiss an action pursuant to FRCP 41(b) for failure to
11 prosecute "to achieve the orderly and expeditious disposition of
12 cases."  <u>Link v Wabash R R Co</u>, 370 US 626, 630-32 (1962); <u>Oliva
13 v Sullivan</u>, 958 F2d 272, 273 (9th Cir 1992).  Because dismissal
14 is a harsh penalty, it should be limited as a sanction only in
15 extreme circumstances.  <u>Thompson v Housing Auth</u>, 782 F2d 829,
16 831 (9th Cir), <u>cert denied</u>, 479 US 829 (1986).  The Ninth
17 Circuit has explained that a district court must weigh several
18 factors to decide whether to dismiss:

> (1) the public's interest in expeditious resolution of
> litigation; (2) the court's need to manage its docket;
> (3) the risk of prejudice to the defendants; (4) the
> public policy favoring disposition of cases on their
> merits and (5) the availability of less drastic
> sanctions.

<u>Thompson</u>, 782 F2d at 831.  Dismissal is proper "where at least
four factors support dismissal, * * * or where at least three
factors 'strongly' support dismissal."  <u>Yourish v Calif Amplif</u>,
191 F3d 983, 990 (9th Cir 1999) (quoting <u>Ferdik v Bonzelet</u>, 963
F2d 1258, 1263 (9th Cir 1992)).

     FRCP 37 also provides sanctions for failure to comply

5

with federal rules pertaining to discovery. The court may "make such orders in regard to the failure as are just," including issue- and claim-dispositive findings. See FRCP 37(b)(2).

The parties do not discuss whether FRCP 37 provides a basis for sanction for violation of Patent LR 3-1. Patent LR 1-2 provides that "[t]he Civil Local Rules of this Court shall also apply to" patent cases, while Civil LR 1-4 provides that "[f]ailure by counsel or a party to comply with any duly promulgated local rule * * * may be a ground for imposition of any authorized sanction." Other patent local rules, aside from 3-1, specifically authorize certain types of sanctions. See, e g, Patent LR 3-8 (prohibiting reliance on opinion of counsel as part of a defense to willful infringement unless a party complies with Patent LR 3-8 or otherwise obtains the permission of all other parties or the court).

While FRCP 37 sanctions are limited to failures to respond to interrogatories and document requests served under FRCP 33 and 34 or to comply with an order compelling disclosure under FRCP 37, the Ninth Circuit has declined to extend these sanctions to general discovery disputes under the rule. <u>Halaco Engineering Co v Costle</u>, 843 F2d 376, 380 (9th Cir 1988). Defendants do not address whether the court may sanction failure to comply with Patent LR 3-1 with the remedies set forth under FRCP 37(b)(2).

Nevertheless, there is no question the court may, again under its inherent authority, sanction failure to comply with court orders, such as the August 13, 2002, order, and for "discovery abuses that may not be a technical violation of the

6

discovery rules." Id at 381. Such action by the court may be justified to "protect[] the due and orderly administration of justice" and "maintain[] the authority and dignity of the court." Primus Automotive Financial Servs, Inc v Batarse, 115 F3d 644, 648 (9th Cir 1997) (citing United States v Hudson, 7 Cranch 32, 34 (1812)). Specifically, in the context of discovery abuse, the court must consider (1) the existence of certain extraordinary circumstances, (2) the presence of willfulness, bad faith, or fault by the offending party, (3) the efficacy of lesser sanctions and (4) the relationship or nexus between the misconduct drawing the sanction and the matters in controversy in the case. In addition, the court may also consider (5) the prejudice to the party victim of the misconduct and (6) the government interests at stake. Halaco Engineering Co v Costle, 843 F2d 376, 380 (9th Cir 1988).

Regardless of the theory, however, the court finds that dismissal of NCT's action on this ground is unwarranted because its third revised PICs are sufficient to comply with Patent LR 3-1, which requires disclosure of:

> (a) Each claim of each patent in suit that is allegedly infringed by each opposing party;
>
> (b) Separately for each asserted claim, each accused apparatus, product, device, process, method, act or other instrumentality * * * of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus must be identified by name or model number, if known. Each method or process must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;
>
> (c) A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, including for each element that such

7

> party contends is governed by 35 USC § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function;
>
> * * *

By previous order, the court rejected defendants' view that NCT was required to reverse engineer the allegedly infringing products to comply with these disclosure requirements. Instead, the court ruled that "reverse engineering or its equivalent" was required to provide the requisite level of preliminary infringement information to defendants. While the court did not elaborate on what an "equivalent" to reverse engineering would entail, the court was animated by its concern that NCT's PICs were "replete with vague discussions of the claim terms" and that NCT "ha[d] provided no further information to defendants than the claim language itself." 8/13/02 Order (Doc #227), at 11-12.

NCT has remedied these deficiencies in its third revised PICs. While NCT's responses may not be an exemplary model of disclosure, Patent LR 3-1 does not require NCT to produce evidence of infringement or to set forth ironclad and irrefutable claim constructions. Rather, Patent LR 3-1 is "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." <u>LG Electronics Inc v Q-Lity Computer Inc</u>, 211 FRD 360, 367 (ND Cal 2002) (quoting <u>Atmel Corp v Information Storage Devices, Inc</u>, 1998 WL 775115 at *2 (ND Cal 1998)). Whether those theories may ultimately be vindicated through claim construction and at trial is an entirely separate

8

matter from whether Patent LR 3-1 has been satisfied. At this juncture, a party may comply with Patent LR 3-1 by setting forth particular theories of infringement with sufficient specificity to provide defendants' with notice of infringement beyond that which is provided by the mere language of the patents themselves. See 8/13/02 Order (Doc #227) ("Patent LR 3-1 * * * takes the place of a series of interrogatories that defendants would likely have propounded had the patent local rules not provided for streamlined discovery.").

Defendants' dozens of objections to NCT's PICs take issue with the ultimate validity of NCT's claim construction or are based on defendants' belief that NCT will be unable to provide evidence of infringement at trial. For example, Inktomi contends that NCT has failed to provide "support for the allegation that [Inktomi's] Traffic Server [product] always saves a copy of the requested data." See Inktomi Mem (Doc #262), at 11. But PICs are not meant to provide a forum for litigation of the substantive issues; they are merely designed to streamline the discovery process. Inktomi essentially objects to the merits of NCT's theory of infringement. These sorts of concerns clearly are not meant to be resolved all in the context of NCT's PICs, and the court declines to do so here. Defendants will be afforded shortly the opportunity to press the validity of NCT's construction of its own patent claims and defendants' products. See Jt Case Mgt Conf Stmt (Doc #247) (Markman hearing scheduled for later this year).

Nor does Patent LR 3-1 require that NCT's preliminary infringement theories be incontrovertible or presented in

9

excruciating detail. While the rule states that these disclosures should be "as specific as possible," there is no requirement that NCT thoroughly present and successfully defend its theories of infringement in the confines of a PIC chart. At this stage, mapping specific elements of defendants' allegedly infringing products onto NCT's claim construction is adequate.

Defendants also contend that by continuing to rely on marketing materials, white papers and other publicly available product documentation, NCT has failed to comply with the court's order which required "reverse engineering or its equivalent." But the question whether NCT conducted "reverse engineering or its equivalent" is not synonymous with whether it has complied with Patent LR 3-1, which, as discussed, requires a party only to set forth its specific theories of infringement. The court finds that NCT has provided sufficient information in its PICs to satisfy Patent LR 3-1.

B

Despite the court's determination that NCT has complied with Patent LR 3-1, information disclosed by way of PICs may nevertheless present a picture of the sort of prefiling investigation conducted by NCT. Because "NCT must provide in its PICs the relevant facts it obtained in its prefiling inquiry," "NCT's PICs * * * provide an accurate picture of the maximum possible inquiry in which NCT engaged before filing suit." See 8/13/02 Order (Doc #227), at 8-9. Thus, the investigative methods underlying NCT's third revised PICs are relevant to defendants' alternative argument that dismissal and

10

other sanctions are warranted under FRCP 11, a subject to which the court turns.

1

FRCP 11 requires counsel to sign every pleading, written motion or other paper presented to the court. Counsel's signature is a certification that "to the best of the person's knowledge, information, and belief," the paper is not baseless or meant to further "any improper purpose" and was submitted "after an inquiry reasonable under the circumstances." FRCP 11(b). A party moving for FRCP 11 sanctions bears the burden of establishing noncompliance. See Tom Growney Equipment, Inc v Shelley Irr Development, Inc, 834 F2d 833, 837 (9th Cir 1987).

The Ninth Circuit has held that, under the "frivolousness prong" of FRCP 11, an attorney may be sanctioned for failing to conduct a reasonable pre-filing inquiry if the paper at issue lacks merit. See In re Keegan Mgt Co Sec Lit, 78 F3d 431, 434 (9th Cir 1995). In that case, the Ninth Circuit explained that FRCP 11 sanctions apply only to "a filing that is both baseless and made without a reasonable and competent inquiry." Id (emphasis in original) (quoting Townsend v Holman Consulting Corop, 929 F2d 1358, 1362 (9th Cir 1990) (en banc)); see also Buster v Greisen, 104 F3d 1186, 1190 (9th Cir 1997).

In a patent infringement case such as this, the Federal Circuit has explained that FRCP 11 "require[s] that an attorney interpret the pertinent claims of the patent in issue before filing a complaint alleging patent infringement." Antonious v Spalding & Evenflo Cos, Inc, 275 F3d 1066, 1072 (Fed Cir 2002).

11

1 This entails, "at a bare minimum, apply[ing] the claims of each
2 and every patent that is being brought into the lawsuit to an
3 accused device and conclude that there is a reasonable basis for
4 a finding of infringement of at least one claim of each patent
5 so asserted." <u>View Eng'g Inc v Robotic Vision Systems, Inc</u>, 208
6 F3d 981, 986 (Fed Cir 2000).

7 Alternatively, the court may sanction conduct under
8 FRCP 11 intended "for any improper purpose, such as to harass or
9 to cause unnecessary delay or needless increase in the cost of
10 litigation." FRCP 11(b). Objective evidence may be used to
11 demonstrate subjective bad intent. See <u>Townsend</u>, 929 F2d at
12 1362. But while defendants contend that NCT's and Jones Day's
13 failure to conduct an adequate pre-filing investigation was
14 intentional, they do not argue that the improper purpose prong
15 of FRCP 11 applies. Accordingly, the court limits its inquiry
16 to the frivolousness prong of FRCP 11.

2

19 NCT does not dispute that it did not engage in what is
20 traditionally thought of as "reverse engineering," which
21 generally involves physical scrutiny and deconstruction of the
22 actual product at issue to ascertain its operation. NCT has
23 admitted that it did not reverse engineer the products at issue
24 prior to filing suit, Transcript (Doc #193), at 41:17-25, but it
25 contends that it need not have done so. NCT argues that its use
26 of marketing materials is equivalent to traditional reverse
27 engineering and that, as a result, its reliance on those
28 materials is adequate to support a reasonable pre-filing

12

inquiry. NCT presents several engineering treatises and articles to support its view that examination of marketing materials alone can operate as the functional equivalent of traditional reverse engineering.

Those treatises, however, recognize the limitation of relying solely on marketing materials, white papers and other product documentation. While these materials do contain some level of technical discussion (see, e g, Geyer Decl (Doc #282), Exh I), looking at these indirect sources of information fails to satisfy the pre-filing investigation requirements described both by <u>View Eng'g</u> and the court's previous order.

To satisfy the reasonable inquiry requirement of FRCP 11, the Federal Circuit requires, at a "bare minimum", that an attorney bringing an infringement suit apply the patent claims at issue "to an accused device." NCT, however, contends that it may compare its patent claims to an accused device without any actual examination of the accused device. The Federal Circuit's holding in <u>Antonious</u> is instructive on this matter. In that case, the plaintiff's law firm admitted that it had not directly examined most of the products alleged to infringe plaintiff's patents. See 275 F3d at 1075-76. "Instead, the * * * attorneys inferred that the [products at issue] had an interior structure similar to the [product they had examined]." Id at 1076. The Federal Circuit held that, "[o]n remand, the trial court must decide whether that inference was reasonable, given the other information the * * * attorneys had at the time." Id.

In the instant case, NCT relies similarly on indirect evidence of infringement. Rather than directly examining of

13

1   each of the allegedly infringing products, NCT looked to
2   indirect evidence whose reliability and actual resemblance to
3   the products in question is questionable.  Here, however, NCT
4   seems to have engaged in even less inquiry than the counsel in
5   <u>Antonious</u>, as NCT apparently failed to examine <u>any</u> of the
6   accused products directly before filing suit.
7        The court finds that, under the circumstances, NCT
8   failed to conduct a reasonable pre-filing investigation.  NCT
9   does not deny that it had the ability to obtain the allegedly
10  infringing products and examine them to determine, for example,
11  whether they operated materially in the manner described by the
12  marketing materials.  It is also undisputed that NCT was aware
13  of possible infringement by defendants' products as late as
14  October 1999, over 18 months before commencement of this suit on
15  May 29, 2001.  See Burton Decl (Doc #255), Exhs 6-7.  NCT's
16  failure to examine the accused products directly is both
17  preposterous and unjustified.  Accordingly, the court concludes
18  that its pre-filing investigation was unreasonable and does not
19  comport with the requirements of FRCP 11.
20       The court, however, declines to award FRCP 11 sanctions
21  at this time because, as earlier described, the Ninth Circuit
22  requires that the filing at issue also be baseless.  See <u>In re</u>
23  <u>Keegan Mgt Co Sec Lit</u>, 78 F3d at 434.  At this juncture, the
24  court is unable to ascertain definitively whether NCT's
25  infringement claims are without any merit.  Cf Committee Notes
26  on Amendments to Fed R of Civ P, 146 FRD 401, 590 (1993) (noting
27  that FRCP 11 "should not be employed * * * to test the legal
28  sufficiency or efficacy of allegations in the pleadings").

**14**

Defendants' reliance on View Eng'g and Antonious to support sanctions at this stage of the litigation is factually misplaced. Unlike the counter-claimant in View Eng'g, who dismissed dozens of claims and "admit[ted] that [they] had no factual basis * * *", 208 F3d at 984, NCT continues to assert that its patent infringement claims have merit. While NCT may have altered its underlying theories of infringement in successive PIC revisions, NCT continues to assert the validity of its claims.

Antonious, also cited by defendants, is inapposite at the present procedural posture because it involved a determination, after summary judgment, that the construction on which the plaintiff's infringement claims were based was frivolous. See 275 F3d at 1071. Indeed, the trial court "withheld ruling on the sanctions motion until the liability issues were finally resolved." Id. Without further proceedings, such as a claim construction or summary judgment hearing, the court cannot definitively assess whether NCT's claims are in fact baseless.

In addition, the court is reluctant to hold that withdrawal of claims or theories of infringement alone is sufficient to conclude that these claims were baseless. With respect to FRCP 11 sanctions against the changing contentions contained in the PICs themselves, the court notes that, by its terms, FRCP 11 sanctions do not extend to discovery disputes. See FRCP 11(d); Patelco Credit Union v Sahni, 262 F3d 897, 913 n15 (9th Cir 2001). Beyond that, however, imposing sanctions merely for withdrawal would ultimately create perverse

15

incentives for parties to extend the lifespan of unsupportable claims and theories in order to avoid accusations of, and sanctions for, purportedly baseless conduct.

Based on the record before it, the court simply cannot ascertain, from an objective standpoint, whether NCT's patent infringement claims are baseless. The court therefore DENIES their motions for dismissal and for other sanctions under FRCP 11 without prejudice to renewal as further developments warrant. If renewed, defendants must demonstrate not only that NCT's claims are erroneous but that they are baseless.

### III

Inktomi also moves for a monetary award pursuant to FRCP 11 for the costs of opposing NCT's motion to strike its affirmative defenses. See Doc #253. But the court granted nearly the entirety of NCT's motion to strike Inktomi's affirmative defenses. See 12/31/01 Order (Doc #53) (striking Inktomi's first, third, fourth, fifth, sixth, seventh, eighth, tenth and eleventh affirmative defenses). The only affirmative defense not struck by the court was Inktomi's second affirmative defense, which the court declined to strike because it found Inktomi's pleading "sufficient" "at this early stage in the litigation." Id at 10-11.

As discussed above, FRCP 11 may only be used to target filings that are baseless. Inktomi cannot credibly contend that NCT's largely successful motion to strike affords a basis for monetary award.

16

## IV

Next, the court considers whether to impose monetary sanctions on NCT and its counsel under 28 USC § 1927. Section 1927 of Title 28 of the United States Code provides:

> Any attorney * * * who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

"Sanctions pursuant to section 1927 must be supported by a finding of subjective bad faith." New Alaska Development Corp v Guetschow, 869 F2d 1298, 1306 (9th Cir 1989). This section does not apply to the initial filing of a complaint; it covers only subsequent conduct. In re Keegan Mgt Co Sec Lit, 78 F3d at 435. Thus, § 1927 does not afford defendants a remedy for lapses in NCT's pre-filing investigation.

Because the court has concluded that NCT is in compliance with Patent LR 3-1 and for reasons discussed in the court's August 13, 2002, order, the court finds that defendants have not established that NCT acted in bad faith by its numerous PIC revisions. NCT did not have definitive notice of the deficiency of its PICs until the court's August 13, 2002, order, and it complied with Patent LR 3-1's requirements soon thereafter. The court therefore DENIES defendants' motion for sanctions to the extent they are sought under 28 USC § 1927 (Doc #253).

## V

This leaves defendants' motion for partial summary judgment that claims 1,2,3 of the '234 patent are not entitled

17

to an earlier priority date. At the March 5, 2003, hearing, in the interest of judicial economy, the court deferred oral argument on defendants' partial summary judgment motion until it had resolved the dispositive motions that are the subject of this order.

Having now determined that dismissal is unwarranted on the present record, the court shall SET a new hearing date so that defendants' motion for partial summary judgment may be heard. Counsel are directed to confer and present to the courtroom deputy within 10 days of the entry of this order a mutually agreeable hearing date.

VI

In sum, the court DENIES defendants' motions for sanctions and to dismiss NCT's complaint (Docs ## 249, 253, 259, 260, 266) without prejudice to renewal if defendants are subsequently able to demonstrate the frivolousness of NCT's patent claims. In addition, the court administratively TERMINATES defendants' motion for partial summary judgment (Doc #231) and REINSTATES it for hearing on a date to be selected by counsel, who are DIRECTED to inform the courtroom deputy within 10 days of the entry of this order of the new hearing date.

As an administrative matter, the court TERMINATES Inktomi's motion to compel production of documents listed in NCT's privilege log (Doc #145). This matter was referred to Magistrate Judge Zimmerman but has not been ruled upon in light of the stay on discovery ordered by the court on August 13, 2001. See 8/13/02 Order (Doc #227), at 14-15. If necessary,

18

1  Inktomi may renew the motion before Magistrate Judge Zimmerman.

3      IT IS SO ORDERED.

5                            /s/

6                VAUGHN R WALKER
              United States District Judge

**United States District Court**
For the Northern District of California